# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL LYNEE HAGAR,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-CV-2381-DMC<br><br><u>MEMORANDUM OPINION AND ORDER</u> |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 10 and 16), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 18 and 23).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 30, 2013. See CAR 17.[1] In the application, plaintiff claims disability began on April 1, 2009. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 29, 2016, before Administrative Law Judge (ALJ) Katherine Weatherly. In a November 23, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): mood disorder, not otherwise specified; bipolar disorder, not otherwise specified; global affective disorder; panic disorder with agoraphobia; rule out cognitive disorder, not otherwise specified; amphetamine dependence, in remissions cannabis abuse by history; and mild lumbosacral and cervical spine degenerative disc disease;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work; no climbing of ladders, ropes, or scaffolds, and no walking on uneven surfaces; the claimant can frequently, not constantly, turn the head in any direction; the claimant can understand, remember, and carry out simple routine repetitive tasks; the claimant can have not more than occasional contact with co-workers or the general public;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as a cashier and sales clerk.

See id. at 20-30.

After the Appeals Council declined review on September 13, 2017, this appeal followed.

///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on September 12, 2018 (ECF No. 15).

4

## III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinion evidence in determining her mental residual functional capacity; (2) the ALJ failed to property evaluate plaintiff's credibility; and (3) the ALJ relied on vocational expert testimony that was based on a flawed hypothetical.

### A. **Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

///

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,
///

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ evaluated the medical opinion evidence to determine plaintiff's mental residual functional capacity. See CAR 25-29. Plaintiff argues the ALJ erred in evaluating the opinions rendered by treating sources Drs. Jones and Kril.

1. Dr. Jones

As to Dr. Jones' opinions, the ALJ stated:

> The evidence contains a statement dated April1, 2013, from Dr. Frederic Jones, Ph.D., a treating mental health doctor. Dr. Jones noted that he had treated the claimant for several months for bipolar/episodic mood disorder, PTSD, and generalized anxiety. Dr. Jones opined that, due to the unpredictability and severity of the symptoms flare-up and the refractory nature of her disorder, the claimant was currently unable to maintain regular employment. Dr. Jones opined that this was likely a permanent condition. Dr. Jones opined that the claimant had moderate to marked limitations in the following: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, and consistently be punctual, and perform at a consistent pace without rest periods of unreasonable length or frequency. She would miss work more than three times per month (Exhibits C9F, page 27 and C21F, pages 1-5 and 4-5).

CAR 25.

The ALJ gave no weight to Dr. Jones' opinions. See id. The ALJ stated:

> . . .First, the issue of disability is specifically reserved for the Commissioner. Further, the opinion is slightly outside the period at issue as the alleged onset date is May 10, 2013. Finally, the objective evidence and the treating records do not support that the claimant is as limited as opined by Dr. Jones (Exhibits B18F, page 2 and C18F, page 16). Accordingly, I give no weight to the opinion of Dr. Jones.

Id.

Curiously, the hearing decision contains a second discussion of these same opinions. See CAR 27-28. Citing the same portions of Exhibit C21F, the ALJ again noted Dr. Jones' diagnoses of bipolar disorder. See id. at 27. Again, the ALJ noted Dr. Jones' opined plaintiff has "moderate to marked inability for the following: carry out detailed instructions, maintain attention and concentration for extended periods, perform at a consistent pace without

7

rest periods of unreasonable length or frequency. . . ." Id. at 28. The ALJ also restated Dr. Jones' opinion plaintiff would miss more than three days of work per month. See id.

Even more curious, however, is the ALJ's second treatment of these opinions. While the ALJ rejected these opinions the first time she discussed them, this time the ALJ accepts most of them: "Except for the opinion that the claimant would miss more than three days of work each month, I give the opinion of Dr. Jones great weight" Id. Rather than finding Dr. Jones' opinions to be unsupported by the objective evidence, this time the ALJ stated Dr. Jones' ". . .opinion of mostly moderate mental health symptoms is consistent with the extensive treatment notes. . . ." Id.

Given that the ALJ both rejected and accepted Dr. Jones' opinions for the same reason, it is impossible to know whether, to what extent, or why the ALJ accepted or rejected any of the doctor's specific opinions. The matter will be remanded to allow the Commissioner to provide a consistent analysis of Dr. Jones' opinions.

2. Dr. Kril

The ALJ noted treating source Dr. Kril also diagnosed bipolar disorder and opined plaintiff had "difficulty thinking or concentrating and was easily distracted. . . ." See id. at 27. The ALJ gave Dr. Kril's opinions no weight because: ". . .the opinion is not consistent with the activities of daily living, the medical evidence of record, and the treating records that generally show only moderate mental health symptoms. . . ." Id. . The court finds this generalized discussion of Dr. Kril's opinions fails to satisfy the requirement that the ALJ identify specific opinions and state the reasons that opinion is not accepted. See Magallanes, 881 F.2d at 751-55. In particular, the ALJ's rationale does not relate in any specific way to Dr. Klim's opinions regarding plaintiff's ability to think and concentrate. This is especially troubling given the ALJ's inconsistent treatment of Dr. Jones' similar opinions based on this same rationale.

The matter will be remanded to allow the Commissioner to more thoroughly discuss Dr. Kril's opinions and the specific reasons for rejecting each one. On remand, the Commissioner is encouraged to provide a specific analysis of Dr. Kril's opinions – as well as those of Dr. Jones – regarding concentration, persistence, and pace.

8

**B.     Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and has provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

/ / /

At Step 4, the ALJ considered the credibility of plaintiff's statements and testimony in determining plaintiff's residual functional capacity. See CAR 28-29. The ALJ summarized plaintiff's statements and testimony as follows:

> The claimant alleged disability based on bi-lateral carpal tunnel syndrome, anxiety, bi-polar disorder, depression, panic attacks, cervical spine impairment, lumbar spine impairment, left knee impairment hardening of the arteries, and heart regurgitation. She reported that she was five feet, three inches tall and weighed 190 pounds (Exhibit C5E, page 2). She submitted an updated medication list that showed medications that included Geodon, Straterra, loratadine, melatonin, and marijuana for pain, anxiety, sleep, and appetite (Exhibit C17E). At the hearing, the claimant testified that she lived with her daughter, three grandchildren who were six years old, three years old, and nine months old. She did not have a driver's license and her sister drove her to the hearing. The claimant testified she got out of her house about twice a week to pick up prescriptions, did not have a GED, and had not worked since her last hearing. Past work to which she testified was caregiving for someone who passed away last year and this work was part time, about 35 hours. She had not worked or applied for jobs. The claimant testified that she could not work due to mild back pain that radiated down her legs. Her neck hurt and she had arthritis.
>
> The claimant testified she could not pick up her grandchildren and could not enjoy them. The claimant testified that, a couple of times a week, she had numbness. She took pain medication and side effects were dry mouth, constipation, and tiredness. The claimant testified she used marijuana for pain and took Geodon for bipolar. The claimant testified that her medication helped her bipolar. The claimant testified that she treated for mental health with Doctors Krill [sic] and Jones and this helped her, although medication helped more than therapy. The claimant testified that she treated with Dr. Ditchey after her doctor thought her heart was enlarged. Dr. Ditchey suspected that her resting sinus tachycardia was medication related (Exhibit C7F, pages 5-7). She underwent an electrocardiogram (ECG), wore a monitor, and had high blood pressure and heart palpitations. The claimant described she had heart palpitations a couple of times a week due to panic, anxiety, and stress. The claimant described that her panic attacks lasted six to seven hours, she felt like she was going to have a heart attack, she got numbness and this happened once a week. She testified that Seroquel gave her heart palpitations and she had trouble breathing.
>
> The claimant testified that her primary medical issue was her back pain but she also had carpal tunnel syndrome and it was hard to hold pens. She testified that she had been tested for CTS but the CTS was not as bad as she expected and she did not like the doctor who administered the test. She could carry seven to ten pounds, sit for ten minutes, and walk for ten minutes, but then would need to rest. Her daily routine was making coffee, watching television, and sometimes made her grandchildren snacks of peanut butter and jelly sandwiches or fruit. The claimant was independent with her personal care, sometimes did dishes, and did some

///

11

laundry. She went to the grocery store with her daughter, had medical appointments once a month, and did not have any social activities.

CAR 23-24.

In determining plaintiff's statements and testimony are not credible, the ALJ cited the following rationale:

> . . .The claimant testified she lived with and cared for her three grandchildren, who ranged in age from six years old to nine months old. She admitted that her mental health medication helped her symptoms. The treating records of Dr. Kril noted that the claimant had no more than moderate mental health symptoms (Exhibits C17F, page 9-10 and C19F, page 2-4). As for the physical conditions, the evidence showed some exertional dyspnea when she got up to use the bathroom at night, no history of chest pain or other symptoms that suggested angina, and no history of syncope (Exhibit C7F, page 5). While the evidence shows some limitations, it also demonstrates that the claimant can perform basic work activities.

CAR 28-29.

Given the errors discussed above with respect to the opinions of Drs. Jones and Kril, in particular the ALJ's citation to the totality of the objective medical evidence to reach opposing conclusions, the court cannot say the ALJ's credibility analysis is free of error. The ALJ rejected plaintiff's statements and testimony as not credible by citing "moderate mental health symptoms." This same evidence, however, formed the basis for the ALJ's inconsistent findings regarding Dr. Jones' opinions, and the ALJ did not provide any specific reason to reject Dr. Kril's similar opinions. Therefore, the ALJ's reference to the objective evidence is insufficient to support the ALJ's adverse credibility finding.

Further, the ALJ erred with respect to reliance on activities of daily living, particularly plaintiff's care for her grandchildren. While the ALJ's credibility analysis suggests the ALJ believed plaintiff is capable of sustained work activity based on her ability to care for here grandchildren, the ALJ's own summary of plaintiff's testimony belies such a suggestion. According to the ALJ, plaintiff testified she could not even pick up her grandchildren and otherwise did not describe testimony of extensive childcare on a sustained basis throughout the day such as would suggest abilities transferrable to a work setting. See Fair, 885 F.2d at 603.

///

Finally, while the ALJ stated the "evidence shows some limitations, it also demonstrates that the claimant can perform basic work activities," CAR at 29, the ALJ does not describe with any particularity which evidence shows which activities plaintiff can perform.

On remand, the ALJ should provide a more detailed credibility analysis.

### C. **Vocational Expert Testimony**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ determined plaintiff can perform other work which exists in significant numbers in the national economy. See CAR 20-30. This finding was based on testimony provided by a vocational expert. See id. at 30. Plaintiff argues the ALJ erred in relying on the vocational expert's response to a flawed hypothetical. Specifically, plaintiff contends the hypothetical was flawed because it did not account for limitations in concentration, persistence, and pace which the ALJ described as moderate.

///

For the reasons discussed above, the court cannot say the ALJ's Step 4 determination of plaintiff's residual functional capacity is without error. It is not necessary, therefore, to reach plaintiff's argument at Step 5 because on remand the Commissioner will be required to provide a new vocational analysis based on a proper residual functional capacity determination

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted;
2. Defendant's motion for summary judgment (ECF No. 23) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: May 20, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE